UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Case No. 22bk04449 |
| Edward Johnson, | Chapter 13 |
| Debtor. | Judge Timothy A. Barnes |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION

The matter before the court comes on the Motion to Disgorge [Dkt. No. 66][1] (the "Motion") of debtor, Edward Johnson (the "Debtor"), in the above-captioned case.  In the Motion, the Debtor seeks to cause the chapter 13 trustee assigned to this case, Marilyn O. Marshall (the "Trustee"), to disgorge fees allegedly wrongfully deducted from his payments and not returned to him when his case was dismissed prior to the confirmation of a chapter 13 plan.

For the reasons more fully stated herein, the Motion is well taken.  The Trustee is not authorized by statute to deduct the fees in question and pay herself her commission on cases dismissed prior to confirmation.  As a result, the Motion will be by order entered concurrent with this Memorandum Decision, GRANTED.

However, the court recognizes that the decision contained herein, if upheld, marks a significant change in the practice of the chapter 13 trustees in this District, if not this Circuit.  As a result, the court will stay the effect of its ruling pending an appeal of the same.  The court also requests herein that the Seventh Circuit Court of Appeals take up this matter, if appealed, on direct appeal to the Circuit.

JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").  28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b).  District courts may refer these cases to the bankruptcy courts for their districts. 28 U.S.C. § 157(a).  In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois.  N.D. Ill. Internal Operating Procedure 15(a).

---

[1]     References to docket entries in the above-captioned bankruptcy case will be denoted as "Dkt. No. ___."

A bankruptcy court judge to whom a case has been referred has statutory authority to enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code.  28 U.S.C. § 157(b)(1).  Bankruptcy court judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code.  28 U.S.C. § 157(b)(3).  As to the former, the bankruptcy court judge may hear and determine such matters.  28 U.S.C. § 157(b)(1).  As to the latter, the bankruptcy court judge may hear the matters, but may not decide them without the consent of the parties.  28 U.S.C. §§ 157(b)(1) & (c).  Absent consent, the bankruptcy court judge must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected."  28 U.S.C. § 157(c)(1).

In addition to the foregoing considerations, a bankruptcy court judge must also have constitutional authority to hear and determine a matter.  *Stern v. Marshall,* 564 U.S. 462 (2011).  Constitutional authority exists when a matter originates under the Bankruptcy Code or, in noncore matters, where the matter is either one that falls within the public rights exception, *id.*, or where the parties have consented, either expressly or impliedly, to the bankruptcy court judge hearing and determining the matter.  *See, e.g., Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 669 (2015) (parties may consent to a bankruptcy court judge's jurisdiction); *Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough").

The payment of claims and refund of plan payments in a case under chapter 13 of the Bankruptcy Code is a matter concerning the administration of the estate and is thus a core proceeding under the Bankruptcy Code.  28 U.S.C. § 157(b)(2)(A); *see, e.g.*, *Washington Fed. Savs. Bank v. McGuier (In re McGuier)*, 346 B.R. 151, 157–58 (Bankr. W.D. Pa. 2006).  A motion seeking redress for alleged violations of the statutory provisions governing such payment and refund thus "stems from the bankruptcy itself," and thus may constitutionally be decided by a bankruptcy court judge.  *Stern*, 564 U.S. at 499.

It follows that the court has the jurisdiction, statutory authority and constitutional authority to hear and determine the Motion.

PROCEDURAL POSTURE

Prior to the commencement of the matter immediately before the court, the Debtor had been a debtor in the above-captioned chapter 13 case (the "Chapter 13 Case").  The Chapter 13 Case was commenced on April 18, 2022.  Voluntary Petition for Non-Individuals Filing for Bankruptcy [Dkt. No. 1].  During the pendency of the Debtor's case, there were a total of eight confirmation hearings.[2]  All but the first hearing were heard concurrently with the Trustee's Motion to Dismiss Case for Unreasonable Delay [Dkt. No. 21] (the "Motion to Dismiss").  At the hearing on January 19, 2023, the Motion to Dismiss was granted, as was the Amended Attorney's Application for Chapter 13 Compensation Under the Court-Approved Retention Agreement [Dkt.

---

[2]  Confirmation hearings occurred on June 9, 2022, July 7, 2022, August 4, 2022, September 15, 2022, September 29, 2022, November 17, 2022, December 8, 2022, and January 19, 2023.  This is, by any measure, an extraordinarily large number of hearings placing an outsized burden on the court, the Trustee, the Debtor and other parties in interest.

No. 36].  *See* Order Dismissing Case for Unreasonable Delay [Dkt. No. 63]; Order Allowing Chapter 13 Compensation Under Court-Approved Retention Agreement [Dkt. No. 64].

On January 23, 2023, less than a week after the dismissal of the above-captioned case but prior to its closure,[3] the Debtor filed the Motion.  In accordance with the Local Bankruptcy Rules for the Bankruptcy Court of the Northern District of Illinois (individually "LBR __"), the Trustee filed a Notice of Objection on February 14, 2023.[4]  *See* Dkt. No. 64.  The Motion was therefore initially heard on February 16, 2023, at which hearing the court entered a scheduling order in relation to the Motion.  *See* Order [Dkt. No. 69] (the "Scheduling Order").

In accordance with the Scheduling Order, on March 9, 2023, the Trustee filed her Response to Debtor's Motion to Disgorge [Dkt. No. 70] (the "Response").  On March 30, 2023, the Debtor filed the Debtor's Reply to Marilyn O. Marshall's Response to Debtor's Motion to Disgorge [Dkt. No. 72] (the "Reply").

On April 13, 2023, the court conducted a hearing on the fully briefed Motion, Response and Reply (the "Hearing").  At the Hearing, counsel for the Debtor and counsel for the Trustee appeared and responded to questions from the court.  At the conclusion of the Hearing, the court took the matter under advisement.

This Memorandum Decision constitutes the court's ruling on the matters so taken under advisement.  In considering the matter, the court has considered the Motion, Response and Reply as well as the arguments and answers of counsel at the Hearing.  Though these items do not constitute an exhaustive list of the filings in the above-captioned bankruptcy case, the court has taken judicial notice of the contents of the docket in this matter.  *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court judge to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).

SUMMARY OF ISSUES PRESENTED

This matter pitches a burgeoning trend of cases against the tried-and-true practices of the chapter 13 trustees in this District (and others).  Yet, "an observation that something is done frequently does not explain why it may be done *properly*.  To infer authority from the existence of some practice is circular." *In re Terrell*, 39 F.4th 888, 891 (7th Cir. 2022).

The facts of this matter are undisputed.  In the case at bar, the Debtor was unable to confirm a chapter 13 plan prior to the dismissal of his case.  Nonetheless, prior to returning the Debtor's plan payments to him, the Trustee deducted from those payments her statutory fee.  The Debtor argues that the Trustee was not authorized to take that action, though taking that action is one frequently performed.  The court agrees and finds no authority for the Trustee to deduct from

---

[3]     Neither dismissal of the case (which occurred) nor closure (which did not) would affect the bankruptcy court's "clean-up" jurisdiction to hear the Motion.  *In re Sweports, Ltd.*, 777 F.3d 364, 367 (7th Cir. 2015).

[4]     A Notice of Objection is a procedural device utilized by a party with an objection to a motion to ensure that said motion is not granted without hearing at its initial presentment hearing, but instead is called and heard.  LBR 9013-1(F).

held plan payments her statutory fee if confirmation of the underlying chapter 13 plan is not obtained prior to dismissal.

DISCUSSION

The question before the court is, first and foremost, one of pure statutory interpretation.  It is also one of emerging and recent case law.  The court will first, therefore, take up the statutory scheme in question.  It will then consider the recent cases on point.  Finally, in light of the court's conclusions herein, the court considers the effect of this ruling and the need for a binding determination on the same in this Circuit.

A.      <u>The Statutory Scheme</u>

Upon commencement of a chapter 13 case, a debtor is required to file with the court a proposed chapter 13 plan.  11 U.S.C. § 1321; Fed. R. Bank. P. 3015(b) (the plan is due within 14 days of filing a bankruptcy petition or conversion of a case to one under chapter 13).  Whether or not such a plan is filed, "[u]nless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount … (A) proposed by the plan to the trustee …."  11 U.S.C. § 1326(a)(1)(A).  In turn, "[a] payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation."  11 U.S.C. § 1326(a)(2).

What happens to those payments when a plan is confirmed is clear.  "If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable."  11 U.S.C. § 1326(a)(2).

What happens to those payments when a case is dismissed before a chapter 13 plan is confirmed is, however, not as clear.  Section 1326(a)(2) states that "[i]f a plan is not confirmed, the trustee shall return any such payments *not previously paid and not yet due and owing to creditors* pursuant to paragraph (3) to the debtor, *after deducting any unpaid claim allowed under section 503(b)*."  11 U.S.C. § 1326(a)(2) (emphasis added).

Upon dismissal of a case where no chapter 13 plan is confirmed, therefore, with two exceptions, the funds paid by the debtor under section 1326(a)(1) are to be returned to the debtor.  The first exception is that the trustee need not return funds previously paid or funds due and owing to creditors.  The second exception is that the trustee may deduct from the funds, prior to returning them, any unpaid claim allowed under section 503(b) of the Bankruptcy Code.

The statutory interpretation of the Trustee's duties under the Bankruptcy Code appear clear.  Into this mix, however, is inserted a chapter 13 trustee's statutory rights to compensation under title 28 of the United States Code (the "<u>Judicial Code</u>").

Section 586(b) of the Judicial Code authorizes, under the right circumstances, the United States Trustee to appoint a standing trustee for administering chapter 13 cases in a specific region. The Northern District of Illinois is in Region 11, where the United States Trustee has appointed four standing trustees including the Trustee here.

4

Such standing trustees have both fixed and variable compensation. 28 U.S.C. §§ 586(e)(1)(A) & (B). What concerns us here is the variable, or "percentage," compensation. Section 586 states that the standing trustee "[s]hall collect such percentage fee from all payments received by such individual under plans in the cases under subchapter V of chapter 11 or chapter 12 or 13 of [the Bankruptcy Code] for which such individual serves as standing trustee." 28 U.S.C. § 586(e)(2).

Notably section 586, while it contains provisions how and in what circumstances a portion of such collections shall be paid to the United States Trustee, 28 U.S.C. §§ 586(e)(2)(A) & (B), is silent as to how and when the collections shall be paid to the standing trustee herself.

As has been noted above, it is the practice of the Trustee in this matter and is understood to be the practice of the chapter 13 trustees in this District, this Circuit and elsewhere throughout the United States that, upon denial of confirmation of a chapter 13 plan, the assigned trustee pays to herself her statutory fee under section 586(e)(2) prior to refunding the funds to the debtor under section 1326(a)(2).

B.    The Emergent Case Law

The Debtor's challenge to the Trustee's practice in the above-captioned case is uncomplicated. He alleges that the Trustee has no authority to pay herself her statutory fee in contravention of the plain language of section 1326(a)(2). The Debtor's argument is based almost entirely in the recent cases on point that hold in his favor, the chief of which is *Goodman v. Doll* (*In re Doll*), 57 F.4th 1129 (10th Cir. 2023).

In *Doll*, the United States Court of Appeals for the Tenth Circuit took up the very same issue at bar in a chapter 13 bankruptcy case arising out of Colorado. There, the Tenth Circuit unambiguously concluded that section 586(e)(2) only authorizes a chapter 13 trustee to "collect" the statutory fee in question. As such, it "only addresses the source of funds that may be accessed to pay standing trustee fees." *Id.* at 1140. Instead, "[i]t is 11 U.S.C. § 1326(a) that addresses those Chapter 13 payments and what happens to that money …." *Id.*

Considering the language of section 1326, the Tenth Circuit stated that:

> Our focus here is on § 1326(a)(2)'s straightforward language stating that "[i]f a plan is not confirmed, the trustee shall return any such [pre-confirmation] payments ... to the debtor." Read together with 28 U.S.C. § 586(e), § 1326(a)(2) unambiguously answers the question presented by this appeal. While § 586(e)(2) directs a Chapter 13 standing trustee to collect his fee from all Chapter 13 plan payments that the trustee receives from the debtor, § 1326(a)(2) requires the trustee to return pre-confirmation payments to the debtor when no plan is confirmed. We read that to mean that the standing trustee must return all of the pre-confirmation payments he receives, without first deducting his fee. There is no indication in this statutory language that the trustee should first deduct his fees before returning the pre-confirmation payments to the debtor when no plan is confirmed.

*Id.* at 1141.

While it found no ambiguity in the statutory scheme, the Tenth Circuit looked further into the Bankruptcy Code and found instances in other types of cases where, upon failure to confirm, trustees were expressly authorized by Congress to first deduct their fees before returning funds. *Id.* at 1141–42; *cf.* 11 U.S.C. § 1194(a)(3) (subchapter V cases); 11 U.S.C. § 1126(a)(2) (chapter 12 cases).

As in this case, the trustee in *Doll* argued that the difference in the drafting of those sections is merely a result in the manner in which the statutes came to pass. Originally, section 586(e)(2) was part of chapter 13 only to be moved to the Judicial Code at a later date. *Doll*, 57 F.4th at 1143. As such, the trustee argued that the use of the term "collect" in section 586(e)(2) must mean "collect and retain," though it means merely collect in subchapter V and chapter 12 cases. The *Doll* court rejected this attempt to find ambiguity in the statute. It concluded that, were it to find "collect" to be sufficiently ambiguous so as to allow the trustee's interpretation, it would be at the same time rendering the specific deduction provisions in subchapter V and chapter 12 as surplusage. *Id.* ("Although the Supreme Court has indicated that its "preference for avoiding surplusage constructions is not absolute," *Lamie*, 540 U.S. at 536, "courts must give effect, if possible, to every clause and word of a statute," *Liu v. S.E.C.*, ⸺ U.S. ⸺, 140 S. Ct. 1936 (2020) (*quoting Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. ⸺, 139 S. Ct. 1881, 1890 (2019)) (citations truncated) (partial cite to *Lamie v. U.S. Tr.*, 540 U.S. 526, 536 (2004)).

A number of courts have adopted the same reasoning of *Doll*. *See, e.g.*, *In re Rivera*, 268 B.R. 292 (Bankr. D.N.M. 2001), *affirmed sub nom.*, *In re Miranda*, 285 B.R. 344 (10th Cir. B.A.P. 2001); *In re Crespin*, Case No. 17-11234 ta13, 2019 WL 2246540 (Bankr. D.N.M. May 23, 2019); *In re Lundy*, Case No. 15-32271, 2017 WL 4404271 (Bankr. N.D. Ohio Sep. 29, 2017); *In re Dickens*, 513 B.R. 906 (Bankr. E.D. Ark. 2014); *In re Acevedo*, 497 B.R. 112 (Bankr. D.N.M. 2013).

Still, *Doll* is not the only word on the matter. A number of cases, led by the case chiefly relied upon by the Trustee, have adopted the Trustee's reasoning. *See McCallister v. Evans*, 637 B.R. 144 (D. Idaho 2022); *see also, e.g.*, *Soussis v. Macco*, Case No. 20-CV-05673 (JMA), 2022 WL 203751 (E.D.N.Y. Jan. 24, 2022); *Nardello v. Balboa* (*In re Nardello*), 514 B.R. 105 (D.N.J. 2014); *McCallister v. Harmon* (*In re Harmon*), Case No. ID-20-1168-LSG, 2021 WL 3087744 (B.A.P. 9th Cir. July 20, 2021); *In re Baum*, Case No. 22-40755, 2023 WL 3294625 (Bankr. E.D. Mich. May 5, 2023).

While it is unfair, therefore, to qualify *Doll* as the majority opinion, neither is it in the minority. It is, to date, the only Circuit level decision on point. Further, the *Soussis* decision is presently on appeal to United States Court of Appeals for the Second Circuit and the *Evans* decision is presently on appeal to the United States Court of Appeals for the Ninth Circuit.

Majority or no, the reasoning in *Doll* is persuasive. Despite the Trustee's arguments to the contrary, sections 586(e)(2) and 1326(a)(2) are not incongruous. Collection in section 586(e)(2) cannot be given the broad but statute-specific meaning the Trustee proposes without running afoul of other uses throughout the Bankruptcy Code (*e.g.*, the chapter 7 scheme to collect, liquidate and distribute the estate under subchapter II) and creating further ambiguity and surplusage. As the Tenth Circuit stated, "[r]ead together with 28 U.S.C. § 586(e), § 1326(a)(2) unambiguously answers the question presented by this appeal." *Doll*, 57 F.4th at 1141. The Trustee must follow the express language of section 1326(a)(2) and return to the Debtor all collected payments still held by the

6

Trustee at the time his case was dismissed, unless excepted from doing so by the express conditions of section 1326(a)(2).[5]

C.       Exigent Circumstances

The court recognizes that the decision contained herein greatly upsets the manner in which chapter 13 cases are administered in this District. A review of the court's records for this District indicates that a large percentage of chapter 13 cases fail to confirm a plan prior to dismissal.

In 2019, when chapter 13 cases were not yet at the present artificial low, out of 18,154 chapter 13 cases, 3,841 failed to confirm a plan prior to dismissal. That is approximately 21% of chapter 13 cases in the District failing to reach confirmation of a plan. In 2021, out of 7,217 cases, 1,818 failed to confirm a plan prior to dismissal. That is approximately 25% of chapter 13 cases in the District failing to reach plan confirmation. Should trustees in this District lose compensation on such a large percentage of their cases, even if such compensation is truncated due to the early cessation of payments in such cases caused by dismissal early in their term, the result will be momentous.

For that reason alone, the parties herein deserve an expedited course to a binding determination. The Judicial Code provides for just such a path. The Court of Appeals may hear a direct appeal from the bankruptcy court.

> [I]f the bankruptcy court, the district court, or the bankruptcy appellate panel involved, acting on its own motion or on the request of a party to the judgment, order, or decree described in such first sentence, or all the appellants and appellees (if any) acting jointly, certify that—
>
> > (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;
> >
> > (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or

---

[5]      There remain open issues here not raised by the parties in their filings or advanced meaningfully in their arguments.

First, section 1326(a)(2) only instructs a chapter 13 trustee how to distribute funds if a plan is confirmed or not confirmed and never addresses dismissal. Denial of confirmation, while it is grounds for dismissal, *see* 11 U.S.C. § 1307(c)(5), does not automatically result in the dismissal of a chapter 13 case. What should happen to the funds held by a trustee when confirmation is denied but a debtor seeks to continue the case is not answered here, though the express language of section 1326(a)(2) might be problematic to such cases.

Second, neither party here was able to answer the court's questions on what might happen to funds collected by a chapter 13 trustee if the trustee is required to pay those funds to the United States Trustee under 28 U.S.C. §§ 586(e)(2)(A) or (B) while a case is pending confirmation of a plan. While the use of the term "pay" in these provisions adds further complication to the questions presented herein and should be addressed, it is beyond the scope of the matters as presented to this court.

(iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken;

and if the court of appeals authorizes the direct appeal of the judgment, order, or decree.

28 U.S.C. § 158(d)(2)(A).

Here, all three subsections are met. The decision contained herein involves a question of law as to which there is no controlling decision of the court of appeals in this Circuit or of the Supreme Court of the United States and involves a matter of public importance. Further, the question presented herein requires a resolution of conflicting decisions among the various Circuits. Finally, an immediate appeal of the issues contained herein will materially advance the progress of bankruptcy cases in this Circuit. Without the same, conflicting decisions with the Circuit can and likely will arise, resulting in different treatment of the statutory trustees herein.

As a result, the court hereby certifies that the factors in section 158(d)(2)(A) are met and respectfully requests that, should an appeal in this matter be timely and properly filed, the Circuit assent to hear the matter on direct appeal. 11 U.S.C. § 158(d)(2)(B).

Further, though section 158 is clear that authority to appeal directly does not in and of itself act as a stay, 11 U.S.C. § 158(d)(2)(D), and a process by which the parties may seek such a stay is clear, Fed. R. Bankr. P. 8007, it is equally clear that this court has the authority to *sua sponte* issue such a stay. *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *Cascades Computer Innovation, LLC v. SK hynix Inc.*, Case No. 11 C 4356, 2012 WL 2086469, at *2 (N.D. Ill. May 25, 2012) ("[T]he court may order a stay pursuant to its inherent power to manage its docket, even *sua sponte*.") (citation omitted); R*ogers v. Ameriprise Fin. Servs., Inc.*, Case No. 07 C 6876, 2008 WL 4826262, at *2 (N.D. Ill. Nov. 4, 2008) (same). The Supreme Court has, in matters of great tumult in bankruptcy cases, done the same. *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 88 (1982) ("The judgment of the District Court is affirmed. However, we stay our judgment until October 4, 1982. This limited stay will afford Congress an opportunity to reconstitute the bankruptcy courts or to adopt other valid means of adjudication, without impairing the interim administration of the bankruptcy laws.").

As a result and, in keeping with the importance of this matter, the court will stay the decision herein pending a determination of this matter by the Court of Appeals. Should the parties fail timely and properly to file an appeal of this matter, the stay will expire. Further, should an appeal be timely and properly filed but the Court of Appeals not accept this matter on direct appeal, the stay will also expire.

CONCLUSION

Based on the foregoing, the court finds that the Motion is well taken. The Trustee is not authorized to deduct from held plan payments her statutory fee if a chapter 13 case is dismissed without confirmation of a plan. As a result, the Trustee must return to the Debtor all payments held

by the Trustee, unless the return of the same is excepted under the express provisions of section 1326(a)(2).

The Motion will be, therefore, GRANTED in the manner set forth herein. A separate order to that effect will be entered concurrently herewith.

Dated: May 12, 2023

ENTERED:

_____
Judge Timothy A. Barnes
United States Bankruptcy Court